# UNITED STATES DISTRICT COURT
# FOR WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

### *ELECTRONICALLY FILED*

| | |
|---|---|
| HEATHER HACK, Individually and On Behalf of All Others Similarly Situated, <br><br> -and- <br><br> GREGORY HACK, As Parent And Next Friend of DH, a Minor, and On Behalf of All Others Similarly Situated <br><br> -and- <br><br> SKYLAR HACK, Individually and On Behalf of All Others Similarly Situated <br><br> **PLAINTIFFS** <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY INSURANCE COMPANY <br> One State Farm Plaza <br> Bloomington, Illinois 61710 <br><br> Serve: Corporation Service Company <br> 421 West Main Street <br> Frankfort, Kentucky 40601 <br><br> **DEFENDANT** | Civil Action No. 3:20-cv-134-CRS |

## COMPLAINT

Plaintiffs Heather Hack, Gregory Hack and Skylar Hack, individually and on behalf of all others similarly situated, state and allege as follows.[1]

## INTRODUCTION

1.  This is an action against State Farm Fire and Casualty Company, a licensed Kentucky property and casualty insurer, for its unlawful practices of relying upon utilization reviews as a basis to reduce and deny owed personal injury protection benefits to its insured claimants. This practice, which is unlawful under the Kentucky Motor Vehicle Reparations Act, has resulted in millions of dollars in benefits going unpaid without reasonable foundation.

2.  This action, in seeking redress for State Farm Fire's conduct, requests relief compelling State Farm Fire to pay these owed benefits, as well as the interest and attorney fees mandated under KRS 304.39. Given the large number of affected Kentucky State Farm Fire insured claimants and the common course of State Farm Fire's conduct, the Plaintiffs herein bring this action on behalf of a putative class of all Kentucky State Farm insured claimants who have had payment of their PIP benefits denied by State Farm Fire on the basis of a utilization review.

## PARTIES

3.  State Farm Fire is an Illinois domiciled insurer authorized to do business in the Commonwealth of Kentucky. Its statutory home office is One State Farm Plaza, Bloomington, Illinois 61710. Its registered agent for process is Corporation Service

---

[1] While Gregory Hack is a Plaintiff, references to the Plaintiffs' PIP claims are to those of Heather Hack, Skylar Hack and DH. Gregory Hack also presented an individual PIP claim arising out of the same accident, but State Farm paid it in full once Gregory's injuries resulted in surgery.

2

Company located at 421 West Main Street, Frankfort, Kentucky 40601.

4. Plaintiffs each reside in the Western District of Kentucky. They each met the definition of an insured with State Farm for PIP benefits arising out of a March 17, 2013 auto accident.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties, the putative class is expected to exceed 100 and the matter in controversy exceeds $5,000,000.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

7. The Kentucky Motor Vehicle Reparations Act (MVRA) is codified in KRS 304.39.

8. The MVRA provides the following description of its policy and purpose:

   a. To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles;

   b. **To provide prompt payment to victims** of motor vehicle accidents without regard to whose negligence caused the accident in order to eliminate the inequities which fault-determination has created;

   c. **To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of**

   **needed medical care and rehabilitation**;

 d. To permit more liberal wage loss and medical benefits by allowing claims for intangible loss only when their determination is reasonable and appropriate;

 e. **To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system;**

 f. To help guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical and equitable system of motor vehicle accident reparations;

 g. To create an insurance system which can more adequately be regulated; and

 h. To correct the inadequacies of the present reparation system, recognizing that it was devised and our present Constitution adopted prior to the development of the internal combustion motor vehicle.

 **(emphasis added)**

9. The primary purpose of the MVRA is to provide qualifying insureds with prompt medical treatment and rehabilitation following injury accidents.

10. Under the MVRA, an insured's medical bills and treatment submitted for payment under PIP benefits are presumed to be reasonable.

11. In fact, the MVRA specifically provides that "[t]here shall be a presumption that any medical bill submitted is reasonable."

12. The MVRA provides the exclusive remedies for insurers seeking to dispute an insured's claim for no-fault benefits.

13. An insurer may not impose additional preconditions to payment of no-fault benefits above and beyond those set forth within the MVRA.

14. Because the medical bills submitted to the PIP carriers are presumed to be reasonable, in order to rebut the presumption, an action must be filed with the courts - and the insurers are required to present evidence to rebut said presumption.

15. Because the bills are presumed reasonable, PIP carriers may not unilaterally reduce or deny an insured's submitted medical bills without reasonable foundation.

16. Because the MVRA provides the exclusive remedies for a PIP carrier to dispute a claim for PIP benefits, the carrier, should it wish to dispute claim for payment of PIP benefits, is bound by the remedies afforded by the MVRA.

17. There is no provision within the MVRA which permits a PIP carrier to deny a claim for submitted PIP benefits to insureds solely upon the basis of findings expressed within a utilization review of the medical records (and any other documents provided to the reviewer).[2]

18. A PIP carrier, by denying medical treatment or bills on the basis of a utilization review, violates the intent and purpose of the MVRA.

19. A PIP carrier's reduction or denial of payment of a claimant's medical treatment based upon a utilization review is inconsistent with subsections 2, 3, 5 and 7 of

---

[2] For reference, State Farm Fire uses the term "utilization review" for what the Kentucky Supreme Court has defined as a "paper review." *Government Employees Insurance Company v. Sanders*, 569 S.W.3d 923 (Ky. 2018).

5

KRS 304.39-010's statement of policy and purpose; all of these subsections are concerned with making sure injured insureds get prompt medical treatment and rehabilitation with prompt payment and simplified procedures.

20. Thus, a utilization review of a Kentucky PIP claim is an impermissible and unlawful procedure for terminating, denying, or reducing payment of an insured's PIP benefits pursuant to the Kentucky Motor Vehicle Reparations Act.

21. At all times relevant herein, State Farm Fire knew or should have known that an insurer's reliance upon a utilization review as the basis to deny Kentucky PIP benefits was unlawful.

22. Despite this, State Farm Fire paid for a substantial volume of utilization reviews which the insurer in turn relied upon as a basis to deny payment of owed PIP benefits.

23. Upon information and belief, State Farm Fire's parent company, State Farm Mutual, has denied more than $6 million dollars in owed PIP benefits to Kentucky insureds due to the findings of approximately ONE THOUSAND AND SIX HUNDRED utilization reviews.

24. State Farm Fire and State Farm Mutual used the same claims handlers and same general claims handling processes to adjust Kentucky PIP claims throughout the period associated with the approximately 1600 State Farm Mutual utilization reviews.

25. In 2016, findings were published from a State Farm Fire market conduct examination in which the company's activities in Kentucky were comprehensively reviewed by the Kentucky Department of Insurance. State Farm Fire acknowledged that the failure to pay owed PIP benefits in a timely manner violated KRS 304.39-210(2) and

warranted remediation with payment of 18 percent interest to the insured subject to the violation.

26. This market conduct exam also concluded that in 20 out of 50 reviewed PIP claims, State Farm Fire were found to have reduced the PIP payments of benefits to providers without proper documentation in violation of KRS 304.39-245 and KRS 304.39-50.

27. This market conduct exam also concluded that State Farm Fire violated KRS 304.39-210(1) and KRS 304.39-210(2) on multiple occasions.

28. In 2016, findings were published from a market conduct examination of State Farm Fire's parent company, State Farm Mutual, in which the State Farm Mutual's activities in Kentucky were comprehensively reviewed by the Kentucky Department of Insurance.

29. In the 2016 published market conduct exam findings of State Farm Mutual, the Kentucky Department of Insurance concluded that:

    a. 50 percent of all reviewed PIP claims had payments of benefits to providers reduced.

    b. Eight percent of all reviewed PIP claims had payments made overdue in violation of KRS 304.39-210(2) in situations where the company was provided reasonable proof of the medical fact with adequate supporting procedural documents and had a completed PIP application on file. State Farm Mutual acknowledged that the failure to pay these owed PIP benefits in a timely manner violated KRS 304.39-210(2) and warranted payment of 18 percent interest to the insureds subject to the violation.

    c. Eight percent of all reviewed PIP claims resulted in the failure to pay applicable interest where a delay of benefits was involved.

30. In 2008, findings from a market conduct exam of State Farm Fire was published by the Kentucky Department of Insurance.

31. Within the 2008 market conduct exam findings, the Kentucky Department of Insurance noted that State Farm Fire had violated KRS 304.39-210(1) and that it had agreed to pay interest to the insured claimants whose PIP benefits were not timely paid.[3]

32. Thus, State Farm was aware, dating back to at least 2008, that the practice of not timely paying owed benefits on their insureds' Kentucky PIP claims was a violation of the MVRA giving rise to liability for 18 percent interest.

33. State Farm's utilization review practices have been subject to national scrutiny since the 1990s.

34. State Farm has repeatedly encouraged their claims handlers to obtain utilization reviews on PIP claims and to cite their findings, when they determine that the insured's medical treatment or billing was excessive or unrelated, as a primary basis in denying payment of medical benefits to insured claimants.

35. In fact, State Farm has contracted with vendors in the past which have retained utilization reviewers who have opined on the reasonableness and necessity of medical treatment without the reviewers ever actually seeing or reviewing the insured claimants' medical records.

36. State Farm Fire, even after receiving notice from the DOI that bills were to be paid within 30 days of proof of loss and that corrective action was necessary, continued

---

[3] See Exhibit A, Kentucky DOI Market Conduct Examinations.

the process of obtaining utilization reviews, either through retained vendors or directly through peer reviewers, and cited the reviews as the basis for reducing or denying PIP benefits to insureds.

37. State Farm Fire is well aware that the Kentucky MVRA provides the exclusive remedies for disputing the payment of PIP benefits.

38. State Farm Fire is well aware that the Kentucky MVRA has never authorized the non-payment of PIP benefits solely upon the basis of a utilization review's findings.

39. State Farm Fire is well aware that its refusal to pay PIP benefits on behalf of an insured claimant which is solely based upon a utilization review's findings is unreasonable, unauthorized by Kentucky law and that the refusal lacks reasonable foundation in violation of KRS 304.39-210(2) and KRS 304.39-220.

40. Many of the utilization reviews obtained by State Farm Fire were nothing more than cut and paste jobs from the utilization reviewers; the same questions were posed for each review and the reviewer would in turn respond with answers which were either identical or substantially similar for all.

41. In fact, within the utilization review of Plaintiff Heather Hack, the reviewing chiropractor forgot to change the name on the page headers from a prior reviewed individual named Allen Wright with a claim number of 0254768203 and an accident date in 2012, to that of Heather Hack.[4]

42. Essentially, by paying a utilization reviewer (either directly or through a vendor) a few hundred dollars to say the same or similar things on nearly all reviewed claims, State Farm Fire was able to then cite these letters as a basis for denying

---

[4] See Exhibit B, Utilization Reviews of the Plaintiffs.

thousands of dollars of owed bills on claims.

43. In 2015, State Farm Mutual obtained a non-binding opinion in the Eastern District of Kentucky in *Risner v. State Farm Mutual Automobile Insurance Company*, 14-41-HRW (decided June 22, 2015) concluding that a utilization review's findings could be a bona-fide and legitimate defense to a claim for PIP benefits.

44. Any and all reliance on this opinion by State Farm Fire as a basis to only pay 12 percent interest, versus 18 percent interest, was explicitly struck down by the Kentucky Supreme Court in 2018 (finding that because *Risner* lacks any citation to Kentucky authority or discussion of the purpose and intent of the MVRA, it was not binding and was not persuasive).

45. Furthermore, subsequent to *Risner*, State Farm Fire was again informed by the Kentucky DOI that a utilization review could not serve as a basis for denying timely payment of PIP benefits.

46. State Farm Mutual did not inform the Court in *Risner* of the DOI's prior market conduct examination findings of 2008.

47. State Farm Mutual did not inform the Court in *Risner* of other DOI market conduct examinations which imposed violations upon Kentucky insurers for relying upon utilization reviews as a basis to deny payment of PIP benefits.

48. State Farm Fire never had legitimate grounds for denying payment of Kentucky insureds PIP benefits on the basis of a utilization review.

49. State Farm Fire's own remediation in response to the DOI's findings in 2008 and 2016, which included interest payments at 18 percent, demonstrated the company's acknowledgment that its conduct lacked reasonable foundation that that this was the

proper interest rate for its conduct.

50. State Farm Fire's practice of using vendors and utilization reviewers which it knew would deny benefits for nearly all claimants was a process which the insurer knew or should have known would lack an objective measure of reviewing claims in a manner which provided reasonable foundation for a decision to not fully pay claims.

51. State Farm Fire, in seeking utilization reviews, did not first address its concerns over treatment and billing with the actual treatment providers who had personally examined the insureds.

52. State Farm Fire's utilization reviews were not "independent":

   a. The insureds were not given any say in who was selected to be the reviewer;

   b. The reviewer was paid by State Farm Fire (either directly or through a vendor);

   c. The reviewer thus had incentive to find favorably for State Farm Fire (or otherwise lose out on a lucrative, high-volume relationship);

   d. The reviewers were bound by the information given to them by State Farm Fire as the insureds were not afforded the option to provide their own information to the utilization reviewers; and

   e. The reviewers did not even personally communicate with the insureds, let alone examine them.

53. Upon information and belief, State Farm Mutual has engaged in remediation efforts on repayment of originally denied PIP claims which were subject to utilization reviews, the substance of which remains in contention in *Irvin v. State Farm,* 3:19 CV-

690-CHB (W.D. Ky. 2019).[5]

54. To the extent State Farm Fire has engaged in remediation efforts, they have been wholly insufficient; this is evidenced by the company's failure to engage in remedial measures on the claims of the Plaintiffs and other putative class members.

55. Each of the Plaintiffs had, within their PIP claims, medical bills and treatment denied by State Farm Fire due to the findings of a utilization review.

56. On March 17, 2013 the Plaintiffs were involved in an auto accident.

57. Each received treatment for injuries arising out of the accident.

58. Each incurred bills for the treatment received.

59. Each was an insured for personal injury protection benefits from State Farm Fire for covered losses arising out of the accident.

60. State Farm Fire submitted materials from the claims of Heather Hack, Skylar Hack, and DH (the minor son of Plaintiff, Gregory Hack) for utilization reviews, all of which were conducted by a chiropractor named Steven B. Smith.

61. Relying upon the utilization review findings, State Farm Fire denied payment of thousands of dollars of PIP benefits and did not consider any billing incurred after an arbitrary date which was approximately six weeks post-accident.

62. Each denial of benefits contained the same reasoning:

> **SF562** - Based on the results of a Utilization Review, State Farm has determined that the treatment billed is not reasonable, and/or medically necessary, and/or related to this auto accident.[6]

---

[5] The Plaintiffs herein have no position on the merits of the pending *Irvin* action with relation to remand and other requested dispositive relief. Rather, this action specifically surrounds the conduct of State Farm Fire.
[6] See Exhibit B.

12

63. Smith concluded, without ever seeing Heather, Skylar, and DH that their spine x-rays were unreasonable, that their therapeutic exercises were unreasonable, that the applications of ice and heat were unreasonable, and that any treatment duration over four weeks was unreasonable.

64. The questions posed to by State Farm to Smith with relation to each of the three individual claimants were identical.

65. Smith's responses to the questions 2-6 (out of six questions total posed by State Farm Fire, via a vendor) were literally identical on two utilization reviews, despite the personal nature of the injuries to each individual. The third review was nearly identical, other than an additional paragraph rejecting the doctor's decision to perform repeat radiographs on a subsequent date.

66. State Farm concluded, based upon the utilization review, that it did not owe benefits on Heather, Skylar, and DH's claims for treatment received more than a few weeks into treatment.

67. State Farm Fire never filed an action in court to petition for an independent medical examination of Heather, Skylar, or DH.

68. State Farm Fire never filed an action in court to dispute the medical treatment or billing of Heather, Skylar, or DH.

69. Steven Smith never personally examined or spoke with Heather, Skylar, or DH.

70. State Farm Fire, upon information and belief, has still not paid the benefits which were denied on the basis of these utilization reviews, has not paid any interest, and has not paid attorney fees.

## **CLASS ALLEGATIONS**

71. Plaintiffs bring this case as a class action under Rule 23 both individually and as representatives of the following persons:

> All individuals who, at any time since February 20, 2005:
>
> Had payment of their Kentucky PIP benefits reduced or denied under an auto policy issued by State Farm Fire Insurance Company due to the findings of a utilization review and who did not, prior to the filing of this lawsuit, have the denied benefits, 18 percent interest on overdue benefits and attorney fees paid in full.
>
> "Utilization review" for purposes of this class definition means a records review relied upon by State Farm Fire as a basis for denying or reducing medical bills or other elements of loss for payment under PIP coverage benefits.
>
> Excluded from the putative class are the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, along with his or her immediate family.

## **GENERAL CLASS ALLEGATIONS**

72. The putative class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23.

73. The putative class is expected to exceed 500 members.

74. The Plaintiffs satisfy the commonality requirements of Rule 23(a). They each allege that State Farm Fire engaged in the same conduct for each putative class member; the insurer relied upon a utilization review as the basis to reduce or deny each putative class member's medical bills and medical treatment, did not pay 18 percent interest on the overdue benefits and did not pay attorney fees.

75. The Plaintiffs satisfy the typicality requirement. The course of conduct leading to their damages is the same for all putative class members.

76. This action satisfies the requisite measures for certification under Rule 23(b)(1).

77. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

78. In the alternative, this action satisfies the requisite measures for certification under Rule 23(b)(3). There are common questions of law and fact which predominate over questions affecting individual members and a class action is superior to other means to adjudicate the controversy.

79. Specifically, the predominant common questions applicable to all members of the class are the same and predominate over any questions specific to individuals:

   a. Was the Defendant's reliance upon utilization reviews as a basis to deny or reduce PIP benefits in violation of the Kentucky MVRA?

   b. Were the Defendant's failures to file court actions in order to rebut the presumption of the reasonableness and/or relatedness of medical bills and treatment, which were submitted for PIP payments, in violation of the Kentucky MVRA?

   c. Were the Defendant's failures to file court actions in order to rebut the presumption of the reasonableness and/or relatedness of medical bills and treatment a waiver of any of the Defendant's rights to contest the treatment and billing under the Kentucky MVRA?

   d. Does the Defendant, in addition to owing payment of overdue benefits, also owe interest at the rate of 18 percent pursuant to KRS 304.39-210 on the claims which it denied on the basis of a utilization review?

   e. Does the Defendant, in addition to owing payment for overdue benefits, also owe attorney fees pursuant to KRS 304.39-220?

   f. Does the Kentucky Supreme Court opinion in *Government Employees Insurance Company v. Sanders*, 569 S.W.3d 923 (Ky. 2018) establish that, as a matter of law, State Farm Fire's conduct in denying payment of PIP benefits on the basis of utilization reviews 1) was in violation of the MVRA and 2) lacked reasonable foundation?

80. An answer to these common questions will drive the resolution of the

litigation class-wide.

81. A class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

82. Plaintiffs are each adequate representatives of the class.

83. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.

84. It would be inefficient, impracticable, and undesirable for each member of the class who suffered harm to bring a separate action.

85. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications.

86. This action can determine, with judicial economy, the rights of all class members.

87. The individual class members are ascertainable.

88. Plaintiffs and counsel do not anticipate any difficulties in the management of the action as a class action. Plaintiffs and counsel will fairly and adequately represent and protect the interests of the class. There are no disabling conflicts of interest that would be antagonistic to other members of the class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the class and the infringement of the rights and the damages they have suffered are typical of other class members.

## **COUNT I: BREACH OF CONTRACT**

89. Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

90.     State Farm Fire, by and through its employees and agents, breached its contractual obligations owed to the Plaintiffs and the putative class when it failed to pay PIP benefits which were owed under the policy contracts.

91.     The Plaintiffs and the putative class are entitled to damages resultant from the Defendant's failure to adhere to its contractual obligations.

**COUNT II: FAILURE TO PAY PIP BENEFITS, 18 PERCENT INTEREST AND ATTORNEY FEES IN VIOLATION OF KRS 304.39**

92.     Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

93.     Plaintiffs and the putative class members each qualified as insureds for purposes of PIP coverage benefits under State Farm Fire policy contracts.

94.     Pursuant to KRS 304.39, State Farm Fire could not lawfully rely solely upon a utilization review finding as a basis to deny the Plaintiffs and the class of payment of these PIP benefits.

95.     The Plaintiffs and the class fall within the class of people which KRS 304.39 was enacted to protect.

96.     KRS 304.39 was intended in part to prevent the conduct of State Farm Fire.

97.     By relying upon utilization reviews as the basis to deny payment of the Plaintiffs' PIP benefits and the putative class's PIP benefits, State Farm Fire was acting in violation of the Kentucky Motor Vehicle Reparations Act as codified within KRS 304.39.

98.     State Farm's failure to timely pay owed PIP benefits requires, pursuant to KRS 304.39-210(2), payment of interest.

99.     State Farm Fire's failure to timely pay owed PIP benefits was without reasonable foundation and thus warrants, pursuant to KRS 304.39-210(2), payment of 18

18

percent interest.

100. State Farm Fire's failure to timely pay owed PIP benefits was without reasonable foundation and thus warrants, pursuant to KRS 304.39-220, payment of reasonable attorney fees.

### COUNT III: REQUEST FOR DECLARATION OF RIGHTS AND DECLARATORY JUDGMENT

101. Plaintiffs incorporate and restate by reference all the preceding allegations as though fully set forth herein.

102. Pursuant to 28 U.S.C. §2201, an actual controversy exists under contracts of insurance and the Plaintiffs, as qualifying insureds under the contracts, may obtain a declaration of rights pursuant to 28 U.S.C. §2201 and declaratory judgment pursuant to Fed. R. Civ. Pro. 57.

103. The Plaintiffs are entitled to a declaratory judgment that State Farm Fire's denial of PIP benefits on the basis of utilization reviews:

    a. Was and is in violation of KRS 304.39, thereby mandating payment of all bills and other elements of loss which were reduced or denied;

    b. Was without reasonable foundation and thus mandates payment of interest at the rate of 18 percent on the overdue benefits, pursuant to KRS 304.39-210(2); and

    c. Mandates payment of attorney fees pursuant to KRS 304.39-220.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief as follows:

    a. An order certifying this case as a class action under Rule 23;

b. Appointment of undersigned counsel as class counsel;

c. Compensatory damages in an amount to be proven at trial;

d. Statutory damages as provided for under KRS 304.39 and all other relevant statutes;

e. Declaratory relief as sought herein;

f. Attorney fees;

g. Costs incurred;

h. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

i. Any and all such other legal and equitable relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of all issues so triable.

Respectfully submitted,

**SAM AGUIAR INJURY LAWYERS, PLLC**

*/s/ Sam Aguiar*
Sam Aguiar
Jonathan B. Hollan
Miles Mussetter
1201 Story Avenue, Suite 301
Louisville, Kentucky 40206
Telephone: (502) 400-6969
Facsimile: (502) 491-3946
sam@kylawoffice.com
jhollan@kylawoffice.com
mmussetter@kylawoffice.com
*Counsel for Plaintiffs*